J-S15042-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| ANDRE LAMONT RANDOLPH | : | |
| | : | |
| Appellant | : | No. 1503 WDA 2018 |

Appeal from the Judgment of Sentence Entered October 9, 2018
In the Court of Common Pleas of Fayette County
Criminal Division at No(s):  CP-26-CR-0000458-2018

BEFORE:   GANTMAN, P.J.E., SHOGAN, J., and COLINS*, J.

MEMORANDUM BY GANTMAN, P.J.E.:               **FILED MAY 10, 2019**

Appellant, Andre Lamont Randolph, appeals from the judgment of sentence entered in the Fayette County Court of Common Pleas, following his jury trial convictions for four counts each of possession of a controlled substance and possession with intent to deliver ("PWID"), and one count of possession of drug paraphernalia.[1]  For the following reasons, we affirm.

The relevant facts and procedural history of this case are as follows. The City of Connellsville Police Department, in conjunction with the Fayette County Bureau of Investigation, had an ongoing investigation into a series of drug sales out of a residence located at 109 Gibson Terrace in Connellsville. Police had conducted multiple controlled drug buys at the residence and

_____

[1] 35 P.S. §§ 780-113(a)(16), (30), and (32), respectively.

_____

*   Retired Senior Judge assigned to the Superior Court.

learned that Appellant was the person selling drugs from the home. On January 29, 2018, police received information that Appellant was going to leave 109 Gibson Terrace in a white Chevy truck, travel to Pittsburgh, and then return to the property. Based on this information, Detective Thomas Patton drove to the home and observed Appellant enter the front passenger side of a white Chevy truck. When the vehicle left the property, Detective Patton followed it for some time. While following the truck, Detective Patton observed it had an out-of-state license plate and a broken taillight.

Police had also received information that the truck would take the Pennsylvania Turnpike to and from Pittsburgh. Multiple officers stationed themselves at the New Stanton Interchange to await Appellant's return. Soon after the truck returned to Connellsville, police effectuated a traffic stop for the broken taillight. Upon approaching the vehicle, Detective Patton noticed a strong odor of marijuana, particularly around Appellant who was sitting in the front passenger seat. Detective Patton asked Appellant to step out of the vehicle and patted Appellant down purportedly for "officer safety." Appellant was wearing multiple layers of clothing, which impaired the pat-down, but Detective Patton felt an unidentified object hanging from Appellant's leg. Due to the odor of marijuana, the unidentified object, and the circumstances surrounding Appellant's involvement in the 109 Gibson Terrace investigation, police took Appellant into custody. At the police station, Detective Patton searched Appellant before placing him in a holding cell. In Appellant's multiple

layers of clothing Detective Patton found a pill bottle containing marijuana, four cellular phones, $6,467.00 in cash, $5.64 in coins, a flashlight, a lock, an inhaler, three compact discs, an ID belonging to "Cody Nicholson," and a set of keys.  During the inventory search, Detective Patton asked Appellant about the keys, and Appellant answered that the keys were to a safe.

Given all of the circumstances, police obtained a search warrant for 109 Gibson Terrace and discovered more contraband, including four digital scales and six firearms (five handguns and a sawed off shot gun).  Police also discovered a safe.  Using the keys found on Appellant's person, police opened the safe and discovered crack cocaine, heroin, marijuana, and cash.  As a result, the Commonwealth charged Appellant with six counts of possession of a firearm prohibited, four counts each of possession of a controlled substance and PWID, two counts of receiving stolen property, and one count each of possession of drug paraphernalia and possession of offensive weapons.

On October 1, 2018, Appellant filed an omnibus pre-trial motion to suppress all of the evidence against him as originally derived from the **Terry**[2] frisk that took place outside the truck, as well as his statement regarding the key for the safe.  On the same day, the court suppressed Appellant's statement concerning the keys but otherwise denied the motion in regard to the **Terry** frisk.  Following a trial on October 3, 2018, a jury convicted

---

[2] **Terry v. Ohio**, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

Appellant of all drug-related charges and acquitted him of all firearms charges. The court sentenced Appellant on October 9, 2018, to twenty-four (24) months' to eight (8) years' incarceration for PWID with no further penalties for the remaining convictions. Appellant timely filed a notice of appeal on October 18, 2018. On October 19, 2018, the court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), which Appellant timely filed on November 1, 2018.

Appellant raises the following issue for our review:

> DID THE TRIAL COURT ERR IN DENYING APPELLANT'S MOTION TO SUPPRESS ALL EVIDENCE FOUND ON HIS PERSON BASED UPON THE OFFICER'S LACK OF JUSTIFICATION TO INSTITUTE A **TERRY** FRISK OF APPELLANT?

(Appellant's Brief at 7).

Appellant argues that police lacked justification to perform the **Terry** frisk during the traffic stop. Appellant alleges Detective Patton failed to articulate specific facts which would have led an objective person to believe Appellant was armed and dangerous and justified a pat-down search for weapons. Appellant asserts police stopped the vehicle he was traveling in for a broken taillight. Appellant stresses Detective Patton testified he patted Appellant down for "officer safety," and further testified he did not believe the unidentified object in Appellant's pant leg was a weapon. Appellant maintains he complied with all officer demands and did not make any furtive movements during the stop. Appellant emphasizes that the odor of marijuana was not

enough to justify the pat-down. Appellant contends this illegal *Terry* frisk led to Appellant's detention, the search of Appellant's clothing at the police station, the detection of the keys to the safe, and, ultimately, the discovery of the contraband in the safe. Appellant concludes that all items found on Appellant's person, including the keys, should have been suppressed and Appellant should be granted a new trial. We cannot agree.

We review the denial of a suppression motion as follows:

> Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct.
>
> > [W]e may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions based upon the facts.

*Commonwealth v. Williams*, 941 A.2d 14, 26-27 (Pa.Super. 2008) (*en banc*) (internal citations and quotation marks omitted). "It is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given their testimony." *Commonwealth v. Clemens*, 66 A.3d 373, 378 (Pa.Super. 2013) (quoting *Commonwealth v. Gallagher*, 896 A.2d 583, 585 (Pa.Super. 2006)).

Section 6308 of the Motor Vehicle Code provides:

**§ 6308. Investigation by police officers**

**(b) Authority of police officer.**—Whenever a police officer is engaged in a systematic program of checking vehicles or drivers or has reasonable suspicion that a violation of this title is occurring or has occurred, he may stop a vehicle, upon request or signal, for the purpose of checking the vehicle's registration, proof of financial responsibility, vehicle identification number or engine number or the driver's license, or to secure such other information as the officer may reasonably believe to be necessary to enforce the provisions of this title.

75 Pa.C.S.A. § 6308(b). Pennsylvania law makes clear, however, that a police officer has probable cause to stop a motor vehicle if the officer observed a traffic code violation, even if it is a minor offense. ***Commonwealth v. Chase***, 599 Pa. 80, 89, 960 A.2d 108, 113 (2008). "[W]hen a police officer lawfully stops a motorist for a violation of the Pennsylvania Motor Vehicle Code, the officer is permitted to ask the driver to step out of the vehicle 'as a matter of right.'" ***Commonwealth v. Boyd***, 17 A.3d 1274, 1277 (Pa.Super. 2011), *appeal denied*, 611 Pa. 677, 29 A.3d 370 (2011) (citation and internal quotation marks omitted). Due to the inherent risks where an officer confronts a suspect, an officer may conduct a protective search of a lawfully stopped suspect if there are reasonable grounds to believe the suspect may be armed and dangerous. ***Terry, supra***.

Instantly, police had probable cause to stop the white Chevy truck, based on the broken taillight in violation of 75 Pa.C.S.A. § 4303 (governing general lighting requirements of motor vehicles operated on roadways). ***See Chase, supra***. Police were also permitted to ask Appellant to step out of the vehicle. ***See Boyd, supra***. In evaluating whether police were justified in the

*Terry* frisk of Appellant, however, the record lacked evidence that police had reason to believe Appellant was armed and dangerous. The Commonwealth presented no testimony that Appellant's clothing had any unusual bulges or that Appellant made furtive movements during the traffic stop. Detective Patton stated he patted Appellant down for "officer safety." That simple statement alone does not rise to the level of a particularized or reasonable suspicion Appellant was armed and dangerous. While the odor of marijuana emanating from Appellant and the vehicle during the traffic stop was enough to suspect criminal activity, it was still not enough to justify the pat-down for weapons. *See In Interest of S.J.*, 551 Pa. 637, 713 A.2d 45 (1998) (holding *Terry* frisk was unjustified where, despite testimony officer detected odor of marijuana on appellant and witnessed appellant's group smoking marijuana, officer failed to articulate specific facts to support belief that appellant was armed and dangerous). Absent specific, reasonable grounds to believe Appellant was armed and dangerous, the pat-down of Appellant was unlawful. *See Terry, supra*. In any event, the pat-down yielded nothing and did not form the sole basis for Appellant's detention.

Notwithstanding the unlawful frisk during the traffic stop, the officers already had probable cause to detain Appellant, given his strong odor of marijuana as well as his extensive and verified involvement in the drug activity at 109 Gibson Terrace. As a result, the subsequent search of Appellant's clothing at the police station constituted a valid inventory search incident to

his detention. **See Commonwealth v. Nace**, 524 Pa. 323, 327, 571 A.2d 1389, 1391 (1990), *cert. denied*, 498 U.S. 966, 111 S.Ct. 426, 112 L.Ed.2d 411 (1990) (stating: "[I]t is reasonable for police to search the personal effects of a person under lawful arrest as part of the routine administrative procedure at a police station house incident to booking and jailing the suspect"). Thus, the court properly refused to suppress the tangible evidence recovered. In other words, the earlier unlawful pat-down was not the sole cause of Appellant's detention and did not serve to taint the physical evidence obtained at the police station and from the subsequent search of Appellant's residence per a valid warrant. Accordingly, we affirm.

Judgment of sentence affirmed.

Judge Colins joins this memorandum.

Judge Shogan concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/10/2019